IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GLASS, LEWIS & CO., LLC,<br>*Plaintiff,*<br>v.<br>GENTNER DRUMMOND, in his official capacity as the Oklahoma Attorney General,<br>*Defendant.* | No. 5:26-cv-02382-PRW |

# DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Submitted by:

GARRY M. GASKINS, II, OBA No. 20212
*Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Garry.Gaskins@oag.ok.gov

COUNSEL FOR DEFENDANT

October 1, 2026

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

BACKGROUND ..... 2

A. The Proxy Advisor Market. ..... 2

B. Why H.B. 4429? ..... 3

C. When Does H.B. 4429 Apply? ..... 4

D. What Does H.B. 4429 Require? ..... 4

E. What Happens if a Proxy Advisor Violates H.B. 4429? ..... 7

ARGUMENT ..... 7

I. Glass Lewis Does Not Have a Likelihood of Success on the Merits of Its Freedom of Speech Claim. ..... 8

A. H.B. 4429 does not discriminate based on viewpoint or content. ..... 8

B. H.B. 4429's disclosures are not unconstitutional. ..... 11

C. H.B. 4429 regulates commercial speech about proxy statements, which is afforded limited protection under the law. ..... 13

i. H.B. 4429 passes rational basis review under *Zauderer*. ..... 15

ii. H.B. 4429 passes intermediate review under *Central Hudson*. ..... 18

D. The Kansas and Indiana decisions do not warrant the same result here. ..... 19

II. Glass Lewis Does Not Have a Likelihood of Success on the Merits of Its Vagueness Claim. ..... 20

III. The Remaining Preliminary Injunction Factors Favor Defendant. ..... 23

IV. If the Court Finds Any Portion of H.B. 4429 Unconstitutional, It Must Be Severed and the Remainder of the Statute Must Remain Valid. ..... 24

CONCLUSION ..... 24

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*303 Creative LLC v. Elenis*,
600 U.S. 570 (2023) ... 12

*All. of Health Care Sharing Ministries v. Conway*,
No. 24-CV-01386-GPG-STV, 2025 WL 315389 (D. Colo. Jan. 13, 2025) ... 14

*Animal Legal Def. Fund v. Kelly*,
9 F.4th 1219 (10th Cir. 2021) ... 10, 11

*Awad v. Ziriax*,
670 F.3d 1111 (10th Cir. 2012) ... 7

*Bd. of Trs. of State Univ. of N.Y. v. Fox*,
492 U.S. 469 (1989) ... 18, 19

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
447 U.S. 557 (1980) ... 18

*Chamber of Commerce v. SEC*,
85 F.4th 760 (5th Cir. 2023) ... 12

*Chamber of Commerce v. SEC*,
88 F.4th 1115 (5th Cir. 2023) ... 12

*Chiles v. Salazar*,
607 U.S. 627 (2026) ... 10, 11

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
596 U.S. 61 (2022) ... 8, 19

*Colorado v. EPA*,
989 F.3d 874 (10th Cir. 2021) ... 7

*Cont'l Res., Inc. v. Wolla Oilfield Servs., LLC*,
510 P.3d 175 (Okla. 2022) ... 22

*Doe v. City of Albuquerque*,
667 F.3d 1111 (10th Cir. 2012) ... 7

*Does 1–11 v. Bd. of Regents of Univ. of Colo.*,
100 F.4th 1251 (10th Cir. 2024) ... 8

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
472 U.S. 749 (1985) ... 13, 14

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) ... 20

*Holder v. Humanitarian L. Project*,
561 U.S. 1 (2010) ... 21

*Iancu v. Brunetti*,
588 U.S. 388 (2019)....................9

*Ill. ex rel. Madigan v. Telemarketing Assocs.*,
538 U.S. 600 (2003)....................19

*ISS v. Kobach*,
No. 2:26-cv-02254-HLT-RES, 2026 WL 1815236 (D. Kan. June 24, 2026)....................19

*ISS v. Rokita*,
2026 WL 1847882 (S.D. Ind. June 26, 2026) .................... 11, 15, 19, 20, 23

*Leavitt v. Jane L.*,
518 U.S. 137 (1996)....................24

*Macquarie Infrastructure Corp. v. Moab Partners, LP*,
601 U.S. 257 (2024)....................12

*Maryland v. King*,
567 U.S. 1301 (2012) ....................23

*Matal v. Tam*,
582 U.S. 218 (2017)....................15

*Munaf v. Geren*,
553 U.S. 674 (2008)....................7

*Nat'l Ass'n of Mfrs. v. SEC*,
105 F.4th 802 (5th Cir. 2024) .................... 2, 18

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
585 U.S. 755 (2018)....................17

*Ohralik v. Ohio State Bar Ass'n*,
436 U.S. 447 (1978).................... 1, 13, 14

*Okla. Corr. Prof'l Ass'n v. Jackson*,
280 P.3d 959 (Okla. 2012) ....................24

*Paris Adult Theatre I v. Slaton*,
413 U.S. 49 (1973)....................14

*R.J. Reynolds Tobacco Co. v. FDA*,
96 F.4th 863 (5th Cir. 2024) ....................17

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015)....................8

*RoDa Drilling Co. v. Siegal*,
552 F.3d 1203 (10th Cir. 2009) ....................23

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995).................... 9, 10

*Schrier v. Univ. of Colo.*,
427 F.3d 1253 (10th Cir. 2005) ....................7

*SEC v. AT&T, Inc.*,
626 F. Supp. 3d 703 (S.D.N.Y. 2022).................... 14, 15

*SEC v. Wall St. Publ'g Inst., Inc.*,
851 F.2d 365 (D.C. Cir. 1988) .................... 14, 15, 19

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)....................15

*United States v. O'Brien*,
391 U.S. 367 (1968)....................10

*United States v. Wenger*,
427 F.3d 840 (10th Cir. 2005) ....................15, 17, 18, 20

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
455 U.S. 489 (1982)....................21

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989)....................20

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008).................... 7, 23

*Wyo. Gun Owners v. Gray*,
83 F.4th 1224 (10th Cir. 2023) ....................20

*Zauderer v. Office of Disciplinary Counsel*,
471 U.S. 626 (1985)....................12, 15, 16, 18

**Statutes**

15 U.S.C. § 77aa....................12

OKLA. STAT. tit. 75, § 11a ....................24

Proxy Advisor Transparency Act, H.B. 4429 (Okla. 2026) ....................*passim*

**Regulations**

17 C.F.R. § 240.14a-6....................11

17 C.F.R. § 240.14a-101....................11

## INTRODUCTION

Glass Lewis asks this Court, on the strength of two preliminary rulings from other district courts, to enjoin a disclosure statute before it takes effect. H.B. 4429 does not tell Glass Lewis what to recommend. It does not tell Glass Lewis what to say about any proposal, whether to consider environmental, social, or governance factors, or which of its clients' chosen policies it may administer. It prohibits nothing. When a proxy advisor recommends a vote against company management, the Act requires the advisor to disclose one fact: whether that recommendation rests on a written financial analysis, as the Act defines that term. The advisor may state that fact in words of its own choosing and surround it with whatever explanation it likes.

That is a securities disclosure, and it belongs to a category of regulation the Supreme Court recognized long before Glass Lewis existed. Glass Lewis sells voting advice to fiduciaries who vote other people's shares. The exchange of information about securities and corporate proxy statements has never enjoyed the protection afforded political debate. *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978). Disclosure requirements in that field are judged under *Zauderer*, and H.B. 4429 satisfies that standard twice over. It compels a factual statement that is reasonably related to preventing deception.

Glass Lewis's principal answer is that the Act discriminates by viewpoint because its duties apply only when Glass Lewis disagrees with management. But management's position is a reference point, not a message the State prefers. Oklahoma takes no side in any shareholder vote. The disclosure is identical whether the dissenting recommendation rests on a climate policy, a faith-based policy, or a governance judgment about an auditor, and an advisor that

sides with management owes nothing regardless of its reasons. Federal proxy regulation has keyed heightened disclosure to opposition for decades, and no court has supposed that the Exchange Act discriminates by viewpoint. The Kansas and Indiana courts reached a different conclusion, but neither decision binds this Court, and both mistook a neutral trigger for a State preference.

Glass Lewis's vagueness claim fares no better. The Act's trigger and geographic scope are clear, and Glass Lewis's own conduct falls squarely within both. A preliminary injunction is an extraordinary remedy reserved for a movant whose right to relief is clear and unequivocal. Glass Lewis has not made that showing, and the motion should be denied.

## BACKGROUND

In the 2026 regular session, the Oklahoma Legislature passed House Bill 4429, also known as the "Proxy Advisor Transparency Act" ("H.B. 4429" or the "Act").

### A. The Proxy Advisor Market.

Shareholders of public companies generally have the right to vote on issues of corporate governance during shareholder meetings. *Nat'l Ass'n of Mfrs. v. SEC*, 105 F.4th 802, 806 (5th Cir. 2024). However, "[m]ost shareholders—including institutional investors like hedge funds and mutual funds—do not attend shareholder meetings in person." *Id.* "They instead vote by proxy." *Id.* "[I]nstitutional investors and investment advisers are accountable for 'voting in potentially hundreds, if not thousands, of shareholder meetings and on thousands of proposals that are presented at these meetings each year, with the significant portion of those voting decisions concentrated in a period of a few months.'" *Id.* (citation

omitted). "During this period, they often need assistance managing the voting process, which otherwise might be unmanageable." *Id.* at 806–07. Proxy advisors provide such assistance.

"Proxy firms research matters subject to vote and advise clients how to vote on these matters[.]" *Id.* at 807. "With institutional investors and investment advisers relying so extensively on them, proxy firms 'have become uniquely situated in today's market to influence, and in many cases directly execute, [their clients'] voting decisions.'" *Id.* (citation omitted).

"As these firms have continued to grow in influence, however, certain concerns have emerged about their practices." *Id.* Notably, "the proxy advice market is effectively a duopoly, because two firms, Institutional Shareholders Services (ISS) and Glass Lewis, control roughly 97% of the market." *Id.* "Investors, registrants, and others have questioned the accuracy of the information and the soundness of the advice that proxy firms provide in this duopolistic market, and they complain about the proxy firms' unwillingness to engage with issuers to correct errors." *Id.* "Attention has also been drawn to potential conflicts of interest arising from proxy firms' provision of consulting services to the same registrants about which they provide voting advice." *Id.*

**B. Why H.B. 4429?**

It goes without saying that "[w]hen shareholders hire professionals to manage investments, they expect that the service will be performed in their financial interest[.]" H.B. 4429 § 2(1). And the recipients of proxy voting advice are often such professionals who owe their clients a fiduciary duty in investing and voting on their behalf. This is why H.B. 4429 requires disclosures to "each shareholder *or entity or other person acting on behalf of a shareholder*[.]"

§ 4(A)(1), (B)(1) (emphasis added). And proxy voting advice is often provided for hundreds or thousands of shareholder votes each year based on policies that do not explain whether or how the policy provisions will maximize returns for investors for any particular vote. § 2(2)–(3). "Proxy advisors in their benchmark policies have recommended votes based on environmental, social, or governance (ESG) investing; diversity, equity, or inclusion (DEI); and social credit and sustainability scores[,] . . . despite having proxy voting policies claiming that the purpose of the policy's recommendations is maximizing, increasing, or protecting shareholder value[.]" § 2(3). H.B. 4429 is aimed at preventing fraudulent and deceptive trade practices by "[r]equiring proxy advisors to provide clear, factual disclosures" regarding their vote recommendations. § 2(4).

**C. When Does H.B. 4429 Apply?**

H.B. 4429 requires certain disclosures when a proxy advisor "makes a recommendation against company management on a company proposal or a proxy proposal, or makes a default recommendation or policy involving votes against company management on company proposals or proxy proposals[.]" H.B. 4429 § 4(A), (B). H.B. 4429's disclosure requirements are further limited to proxy advisory services provided in connection with or in relation to a company or to any person in the State of Oklahoma. H.B. 4429 § 3(7).

**D. What Does H.B. 4429 Require?**

H.B. 4429 is designed to prevent deception about whether a proxy advisor has recommended any particular vote based on maximizing returns for investors. It does not restrict what a proxy advisor can say to its client in any way. And, importantly, it does not require that a proxy advisor make voting recommendations that are in the financial interests

of shareholders. Rather, it is designed to provide shareholders with factual disclosures about the basis of a proxy advisor's recommendations.

When a proxy advisor "makes a recommendation against company management on a company proposal or a proxy proposal" or makes a default recommendation or policy that essentially does the same, H.B. 4429 § 4(A), (B), the Act requires one of two different sets of disclosures depending on whether the recommendation is based on a statutorily defined "written financial analysis."

The Act defines a written financial analysis as a "written document" that:

a. analyzes the expected short-term and long-term financial benefits and costs to the company of implementing a company proposal or proxy proposal,

b. concludes what vote or course of action is most likely to positively affect shareholder value, and

c. explains the methods and processes used to prepare the analysis, including the experience and geographic location of the personnel who formed the recommendation.

H.B. 4429 § 3(10).

If the recommendation against company management *is* based on the statutorily defined written financial analysis, the proxy advisor shall provide a "clear and conspicuous disclosure" to shareholders that:

a. identifies the service being provided,

b. identifies the recommendation or policy at issue,

c. states that the proxy advisor has made the recommendation or policy based on a written financial analysis meeting that definition, and

d. states that the analysis is available upon request.

H.B. 4429 § 4(B)(1).

Additionally, the proxy advisor must "[m]ake such analysis available within a reasonable time to any recipient of the proxy advisory service upon request;" and, for certain proxy advisory services, "provide a copy of such analysis to the board of directors of each company that is the subject of the service." H.B. 4429 § 4(B)(2)–(3).

If the recommendation against company management *is not* based on the statutorily defined written financial analysis, the proxy advisor shall provide a "conspicuous disclosure" to shareholders that:

a. identifies the service being provided,

b. identifies the recommendation or policy at issue, and

c. states that the proxy advisor has made the recommendation or policy without doing so based on a written financial analysis regarding the impact of that recommended action on company investors meeting that definition.

H.B. 4429 § 4(A)(1).

Additionally, for certain services, the proxy advisor must also send a copy of the disclosure to the board of directors of each company that is the subject of the service. H.B. 4429 § 4(A)(2). Lastly, while such services are being provided, the proxy advisor must "publicly and conspicuously disclose on the home or front page of the proxy advisor's website a statement that the advisor's proxy advisory services include one or more services that include recommendations or policies against company management on company proposals or proxy proposals that are not made based on a written financial analysis." H.B. 4429 § 4(A)(3). The statutory definition of "written financial analysis" is also included in the disclosure. *Id.*

Notably, for either set of disclosures, H.B. 4429 does not prescribe a particular form of disclosure, and the proxy advisor is free to add comment or explanation.

### E. What Happens if a Proxy Advisor Violates H.B. 4429?

A violation of the Act is a "deceptive trade practice" under Oklahoma law and is actionable under the enforcement provisions of that statute. § 5(A). Further, the Attorney General may exercise all investigative powers under any applicable law related to deceptive practices if the Attorney General has reason to believe a violation has occurred or is about to occur. *Id.* Additionally, any person aggrieved by a violation of the Act may bring an action seeking a declaratory judgment or injunctive relief against a proxy advisor who violates the Act. § 5(B).

## ARGUMENT

A preliminary injunction is not proper here. A preliminary injunction is an "extraordinary and drastic remedy" that "is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citations omitted). To obtain it, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). For the injunction to issue, "the right to relief must be clear and unequivocal." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (citation omitted). Courts disfavor preliminary injunctions "that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Colorado v. EPA*, 989 F.3d 874, 883–84 (10th Cir. 2021) (citation omitted). This type of injunction "must be more closely scrutinized." *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012) (citation omitted).

Citing *Doe v. City of Albuquerque*, 667 F.3d 1111, 1120 (10th Cir. 2012), Glass Lewis

implies that Oklahoma bears the burden of establishing constitutionality. Doc. 8 at 8. However, this burden shift does not happen unless Glass Lewis first carries its burden to show that H.B. 4429 burdens protected speech. *See Does 1–11 v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1268 (10th Cir. 2024). Only then does the burden shift to Oklahoma to satisfy the relevant level of scrutiny. *Id.*

## I. Glass Lewis Does Not Have a Likelihood of Success on the Merits of Its Freedom of Speech Claim.

### A. H.B. 4429 does not discriminate based on viewpoint or content.

Glass Lewis attempts to leverage strict scrutiny review by arguing that H.B. 4429 discriminates based on viewpoint and content. This argument fails. H.B. 4429 is content- and viewpoint-neutral. Oklahoma does not seek to punish speech about any particular subject or with any particular viewpoint, but to prevent deception when a proxy advisor presents itself as speaking in shareholders' financial interest based on an objective analysis without disclosing whether any such analysis exists.

A regulation of speech is content-based under the First Amendment "if it 'target[s] speech based on its communicative content'—that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). However, a regulation is not content-based simply because it requires reading the speech at issue. *Id.* For example, in *City of Austin*, the Supreme Court upheld a city code provision prohibiting the digitization of off-premises signs (signs that promote ideas, products, or services located elsewhere) but not the digitization of on-premises signs (those that promote or identify things located onsite). *Id.* at 65–67. Though the code at issue required an

examination of speech, it was in service of drawing neutral, location-based lines and it was "agnostic as to content." *Id.* at 69.

Here, H.B. 4429 addresses no particular message. As in *City of Austin*, the "substantive message itself is irrelevant to the application of the provisions." *Id.* at 71. And even though H.B. 4429 "require[s] some evaluation of the speech," that does not make it content-based, since it does not "single out any topic or subject matter for differential treatment." *Id.* at 71–72. H.B. 4429 requires the same disclosure whenever a proxy advisor recommends against management, whatever the subject of the vote and whatever the advisor's reasons.

Glass Lewis relies on *Iancu*, where the Supreme Court noted that "[t]he government may not discriminate against speech based on the ideas or opinions it conveys." *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019) (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829–30 (1995)). In *Iancu*, the plaintiff brought a First Amendment challenge to a statute that prohibited the registration of "immoral[] or scandalous" trademarks after the United States Patent and Trademark Office denied registration of his trademark "FUCT." *Id.* at 390–92. The registration restriction was found to be viewpoint-based because it "distinguishe[d] between two opposed sets of ideas: those aligned with conventional moral standards and those hostile to them . . . ." *Id.* at 394.

H.B. 4429 is distinguishable from the statute at issue in *Iancu*. H.B. 4429's disclosure requirements are triggered without regard to the content or viewpoint of the proxy advisor's message. For example, H.B. 4429's disclosure duty would be triggered by "anti-ESG" proxy advisors and "pro-ESG" proxy advisors alike. In either case, if the advisor opposes

management, it must disclose whether it based its recommendation on a written financial analysis and, if so, provide that analysis.

Glass Lewis appears to make the assertion that the purpose behind a statute, without regard to the text of the statute itself, can be "[i]ndependently dispositive" of the First Amendment issue. Doc. 8 at 11. For this theory, Glass Lewis quotes language from *Rosenberger v. Rector & Visitors of University of Virginia*, where the Supreme Court stated that "[t]he government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." 515 U.S. 819, 829 (1995). But the Legislature stated its purpose in the text: to "prevent fraudulent or deceptive acts and practices in this state" through "clear, factual disclosures." H.B. 4429 § 2(4). Glass Lewis answers with one legislator's remark at a committee hearing and a private organization's mission statement. Doc. 8 at 11–12. "What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it." *United States v. O'Brien*, 391 U.S. 367, 384 (1968). And the Act operates as its text says. It applies to every recommendation against management, including one opposing an ESG proposal that management supports.

Glass Lewis's principal authorities do not hold otherwise. Doc. 8 at 8–10. In each, the State took a side on the subject of the speech and burdened the other side. The Colorado law in *Chiles v. Salazar* allowed a counselor to express acceptance and support for a client's identity exploration but forbade her to say anything that attempted to change the client's sexual orientation or gender identity, thereby "prescribing what views she may and may not express." 607 U.S. 627, 645 (2026). The Kansas statute in *Animal Legal Defense Fund v. Kelly* reached a

person who lied to gain control of an animal facility intending to expose wrongdoing, but not one who told the same lie intending to laud the facility. 9 F.4th 1219, 1233 (10th Cir. 2021). H.B. 4429 forbids nothing, and it has no side to favor. Management supports some ESG proposals and opposes others, so the same recommendation on the same subject triggers the Act at one company and not at the next. A trigger that turns on someone else's position, and not on what the advisor says about any issue, does not "dictate what particular opinion or perspective individuals may express." *Chiles*, 607 U.S. at 641 (internal quotation omitted).

*Rokita* reasoned that such a statute puts "a thumb on the scale in favor of management's recommendation on all issues." *ISS v. Rokita*, 2026 WL 1847882, at *6 (S.D. Ind. June 26, 2026) (emphasis omitted). But a disclosure duty keyed to opposition is a settled feature of proxy regulation, not a preference for management. A registrant facing a solicitation in opposition loses the exemption from filing preliminary proxy materials with the SEC, 17 C.F.R. § 240.14a-6(a), and participants in an opposition solicitation must furnish disclosures that a management solicitation need not, *see* 17 C.F.R. § 240.14a-101, Items 4(b), 5(b). Those rules have never been thought to discriminate by viewpoint. They recognize, as H.B. 4429 does, that a contested vote is where shareholders most need to know the basis for the advice they receive.

**B. H.B. 4429's disclosures are not unconstitutional.**

Glass Lewis claims that H.B. 4429 unconstitutionally compels speech. Doc. 8 at 12–13. However, H.B. 4429 merely requires certain factual disclosures that use statutorily defined terms. Additionally, it does not prohibit Glass Lewis from adding any speech that it wishes to add.

Disclosure requirements are commonplace in the securities industry and routinely upheld. For example, in *Chamber of Commerce v. SEC*, the Fifth Circuit rejected a First Amendment challenge to an SEC rule requiring companies to "report day-to-day share repurchase data once a quarter and to disclose the reason why the issuer repurchased shares of its own stock." 85 F.4th 760, 766 (5th Cir. 2023) (remanding on other grounds); *see also* 88 F.4th 1115 (5th Cir. 2023) (vacating the rule on those grounds). And year after year, companies file an array of reports and other disclosures that the SEC has mandated since the 1930s. *See, e.g.*, 15 U.S.C. § 77aa; *see also Macquarie Infrastructure Corp. v. Moab Partners, LP*, 601 U.S. 257, 260 (2024). Those settled requirements show a long history and tradition that supports mandatory commercial disclosures in the securities industry.

Further, in the realm of commercial speech, there are "material differences between disclosure requirements and outright prohibitions on speech," and disclosure requirements warrant lesser scrutiny than prohibitions. *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 650–51 (1985). Indeed, "the First Amendment interests implicated by disclosure requirements are substantially weaker than those at stake when speech is actually suppressed." *Id.* at 651 n.14.

Glass Lewis compares H.B. 4429 to the Colorado law found to be unconstitutional in *303 Creative*. Doc. 8 at 13. There, Colorado sought to compel a designer to create custom wedding websites celebrating marriages she did not endorse. *303 Creative LLC v. Elenis*, 600 U.S. 570, 588 (2023).

The law at issue in *303 Creative* is thus readily distinguishable from the law at issue here. H.B. 4429 does not force proxy advisors to create custom websites celebrating views that they

do not endorse. H.B. 4429 requires only certain disclosures based on statutorily defined terms. And it does not limit proxy advisor speech in any way. Glass Lewis is free to explain in its own words why the disclosures appear and even to express its disagreement with them. Nor does the Act require Glass Lewis to prepare a written financial analysis or to adopt any conclusion about shareholder value. An advisor that prepares no such analysis simply says so. H.B. 4429 § 4(A)(1).

### C. H.B. 4429 regulates commercial speech about proxy statements, which is afforded limited protection under the law.

Strict scrutiny does not apply here because, as explained above, H.B. 4429 does not regulate speech based on content or viewpoint, as Glass Lewis claims. Moreover, H.B. 4429 regulates commercial disclosures about proxy statements, speech that is afforded limited protection under the law.

The Supreme Court has "long recognized that not all speech is of equal First Amendment importance." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758 (1985) (plurality opinion). "[T]he most prominent example of reduced protection for certain kinds of speech concerns commercial speech." *Id.* at 758 n.5. Such speech, the Supreme Court has noted, "occupies a 'subordinate position in the scale of First Amendment values.'" *Id.* (quoting *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 456 (1978)). "Accordingly, it may be regulated in ways that might be impermissible in the realm of noncommercial expression." *Id.*

Notably, in addition to "commercial speech," the Supreme Court, in *Ohralik*, listed several examples of communications that are regulated without offending the First Amendment: "*the exchange of information about securities, corporate proxy statements*, the exchange of price and production information among competitors, and employers' threats of retaliation

for the labor activities of employees." *Ohralik*, 436 U.S. at 456 (emphasis added). "Each of these examples illustrates that the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." *Id.*

The speech at issue in this case is not political speech. H.B. 4429 regulates disclosures related to proxy statements, speech that is afforded limited protection under the law. Indeed, "regulation of the exchange of information regarding securities is subject only to limited First Amendment scrutiny." *SEC v. Wall St. Publ'g Inst., Inc.*, 851 F.2d 365, 373 (D.C. Cir. 1988). Notably, "[s]peech relating to . . . securities . . . forms a distinct category of communications in which the government's power to regulate is at least as broad as with respect to the general rubric of commercial speech." *Id.*; *see also Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 64 (1973); *Ohralik*, 436 U.S. at 456; *Dun & Bradstreet*, 472 U.S. at 758 n.5; *SEC v. AT&T, Inc.*, 626 F. Supp. 3d 703, 743 (S.D.N.Y. 2022); *All. of Health Care Sharing Ministries v. Conway*, No. 24-CV-01386-GPG-STV, 2025 WL 315389, at *32 (D. Colo. Jan. 13, 2025) ("[I]n the securities context, courts generally uphold compelled disclosure requirements under deferential rubrics").

The court in *SEC v. AT&T, Inc.* explained:

> [D]efendants' suggestion that all content-based regulations must satisfy strict scrutiny overlooks the significant body of decisions involving laws and regulations mandating affirmative disclosures of information, particularly for . . . participants in the securities industry. These disclosure provisions are explicitly content based. They require the disclosure of certain content . . . and do not require the disclosure of others . . . . Yet these have routinely withstood First Amendment challenges without any suggestion that strict, or even intermediate, scrutiny applied. As the District of Columbia Circuit has recognized, "Speech relating to . . . securities forms a distinct category of communications. [] If [such] speech . . . were totally protected, any regulation of the securities market would be infeasible—and that result has long since been rejected."

*AT&T, Inc.*, 626 F. Supp. 3d at 743 (quoting *Wall St. Publ'g*, 851 F.2d at 373). Thus, whether the speech H.B. 4429 regulates is commercial speech or information about corporate proxy statements, or both, it warrants only rational basis review.

Glass Lewis argues that, if viewpoint discrimination is found, such discrimination "*always* requires at least strict scrutiny." Doc. 8 at 13. In support of this argument, Glass Lewis cites *Sorrell v. IMS Health Inc.* for the proposition that "[c]ommercial speech is no exception." 564 U.S. 552, 566 (2011). But the Court in *Sorrell* did not hold that strict scrutiny applies whenever viewpoint discrimination is found in the commercial context. Rather, the Court noted that the outcome would be the same "whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied." *Id.* at 571. For that reason, the Court declined to determine whether commercial speech was at issue. *Id.* The question remains open. *See Matal v. Tam*, 582 U.S. 218, 245 (2017) (plurality opinion); *Rokita*, 2026 WL 1847882, at *8 (applying intermediate scrutiny after finding viewpoint discrimination).

**i. H.B. 4429 passes rational basis review under *Zauderer*.**

For informational disclosure requirements on commercial speech, the applicable standard of review is the deferential rational basis test under *Zauderer*. Under *Zauderer*, disclosure requirements for commercial speech are valid so long as they require "purely factual and uncontroversial information" and are "reasonably related to the State's interest in preventing deception of consumers." 471 U.S. at 651. As the Tenth Circuit explained, *Zauderer* "eases the burden" for a regulation that "requires disclosure only of factual and uncontroversial information and is not unduly burdensome." *United States v. Wenger*, 427 F.3d 840, 849 (10th Cir. 2005). Indeed, "[i]n assessing disclosure requirements, *Zauderer* presumes

that the government's interest in preventing consumer deception is substantial, and that where a regulation requires disclosure only of factual and uncontroversial information and is not unduly burdensome, it is narrowly tailored." *Id.*

H.B. 4429 requires purely factual and uncontroversial disclosures. The disclosures require proxy advisors to state a simple binary fact: whether the recommendation against company management is based on a written financial analysis that meets certain statutory criteria or not. H.B. 4429 does not mandate the form for the disclosures or limit what Glass Lewis can say in defense of its advice. Nothing in H.B. 4429 requires false or controversial speech within the meaning of *Zauderer*.

Further, the disclosure requirements of H.B. 4429 are reasonably related to the State's interest in preventing deception of consumers. Oklahoma has a legitimate state interest in protecting Oklahoma consumers from fraud and deception. More specifically, Oklahoma has a legitimate interest in ensuring participants in the proxy services market are not deceived as to the rationale behind the advice they receive.

Lastly, none of the required disclosures under H.B. 4429 is unduly burdensome. Glass Lewis is free to craft its disclosures however it likes. Importantly, the State need not select the "least restrictive means" to address a problem but rather must take only an approach that is "reasonably related" to it. *Zauderer*, 471 U.S. at 651 & n.14.

H.B. 4429 requires a mere factual disclosure about whether Glass Lewis's advice is based on certain financial criteria or not. A factual disclosure does not reflect an opinion merely because it compels a speaker to convey information contrary to its interests. That is why, for example, the government can compel cigarette manufacturers to include graphic

warnings on every cigarette package. *R.J. Reynolds Tobacco Co. v. FDA*, 96 F.4th 863, 882 (5th Cir. 2024). Companies would, presumably, prefer not to tell every customer who considers purchasing their products that the products can lead to serious health conditions. *See id.* at 873. But the First Amendment does not give them a right to conceal that information from customers. *Id.* at 887.

Glass Lewis argues that *Zauderer* is confined to advertising and that its advice comes after the sale. Doc. 8 at 17–20. *Zauderer* is not so narrow. It reaches disclosures "about the terms under which . . . services will be available," *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 768 (2018) ("*NIFLA*") (internal quotation omitted), and the Tenth Circuit applied it to a paid stock promoter's newsletter and radio program, speech that was "concededly not a traditionally structured advertisement." *Wenger*, 427 F.3d at 847, 849–50. Although *Wenger* noted that "disinterested investment advice" retains full protection, *id.* at 848 (emphasis omitted), H.B. 4429 leaves Glass Lewis's advice untouched and regulates only the accompanying disclosure. Whether a recommendation rests on a financial analysis is a term of the service a proxy advisor sells, and the home page on which Glass Lewis promotes that service is commercial speech by any measure. Doc. 1 ¶ 90. Nor is the disclosure controversial in the *NIFLA* sense. The notice there required clinics to disclose information about state-sponsored services, including abortion, "anything but an 'uncontroversial' topic." 585 U.S. at 769. H.B. 4429 requires a statement about the advisor's own work. Whether a document exists that does the three things Section 3(10) lists is a fact. And Glass Lewis's objection that a partial analysis must be disclosed as no analysis, Doc. 8 at 5 n.1, overlooks that the statement recites the statutory elements and that Glass Lewis may say which of them its report contains.

**ii. H.B. 4429 passes intermediate review under *Central Hudson*.**

Even if *Zauderer* did not apply, commercial speech that is not in the realm of disclosure requirements enjoys lesser, intermediate-scrutiny protection under the *Central Hudson* framework. *See Zauderer*, 471 U.S. at 637.

Under *Central Hudson*, first, the court must determine whether the commercial speech (1) concerns unlawful activity, or (2) is misleading. If the answer to either of those questions is yes, then that commercial speech is not protected by the First Amendment at all. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980).

If the commercial speech does pertain to lawful activity and is not misleading, then the court must determine "whether the asserted governmental interest is substantial." *Id.* Next, the court "must determine whether the regulation directly advances the governmental interest asserted" and whether the regulation "is not more extensive than is necessary to serve that interest." *Id.* Notably, however, this standard does not require that a restriction be the "single best disposition" or "least restrictive means" of achieving that end but rather requires a "fit" between the "ends and the means" that is "reasonable" and "in proportion to the interest served." *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989) (citation omitted).

Shareholders and those who act on their behalf can be misled when proxy advisors claim on their websites to maximize shareholder value but provide voting recommendations that are not grounded in financial analysis. The Legislature so found. H.B. 4429 § 2(3); *see also Nat'l Ass'n of Mfrs.*, 105 F.4th at 807. Under *Central Hudson*, such misleading commercial speech is provided no First Amendment protection at all. 447 U.S. at 566. Further, "[i]t is undisputed that the government has an interest in protecting consumers from being misled." *Wenger*, 427

F.3d at 850 (citing *Ill. ex rel. Madigan v. Telemarketing Assocs.,* 538 U.S. 600, 612 (2003)). And the disclosure requirements of H.B. 4429—disclosure of whether or not a statutorily defined financial analysis was done—are "reasonable" and "in proportion to the interest served." *Fox*, 492 U.S. at 480.

**D. The Kansas and Indiana decisions do not warrant the same result here.**

Glass Lewis relies throughout its motion on district court decisions from Kansas and Indiana: *ISS v. Kobach* and *ISS v. Rokita*. Those rulings do not bind this Court. The Kansas and Indiana decisions are preliminary rulings on preliminary records. They deserve the respect owed to any thoughtful district court opinion, but no more.

In *Kobach*, Kansas told the district court that it "would not argue that SB 375 satisfies strict scrutiny" if the court found the statute viewpoint-based. *ISS v. Kobach*, No. 2:26-cv-02254-HLT-RES, 2026 WL 1815236, at *8 (D. Kan. June 24, 2026). Once the court deemed the trigger viewpoint-based, nothing remained to analyze. *Id.* That threshold ruling is the one Oklahoma contests here.

The Kansas district court in *Kobach* got it wrong because it conflated a neutral reference point trigger (disagreement with management) with a viewpoint the State preferred. *See City of Austin,* 596 U.S. at 69. But, as explained in detail above, even if the Court views the line as content-based, a securities disclosure does not draw strict scrutiny. Moreover, the commercial speech analysis in *Kobach* asked whether proxy advisor recommendations were advertisements, which is the wrong question when dealing with a securities disclosure. 2026 WL 1815236, at *9; *Wall St. Publ'g*, 851 F.2d at 373 ("Speech relating to . . . securities . . . forms a distinct

category of communications in which the government's power to regulate is at least as broad as with respect to the general rubric of commercial speech.").

*Rokita* assumed the speech was commercial but declined to apply *Zauderer*, reasoning that the disclosures are not "purely factual" because the advisor is "beholden to the legislature's definition" of a written financial analysis. 2026 WL 1847882, at *8. A statutory definition is not an opinion. Every mandated disclosure turns on terms the legislature defines, and whether a document meeting Section 3(10) exists is a question of fact. *Rokita* also faulted Indiana for offering "no evidence" that any client had been deceived. *Id.* at *9. But *Zauderer* "presumes that the government's interest in preventing consumer deception is substantial," *Wenger*, 427 F.3d at 849, and the Oklahoma Legislature made findings on the point. H.B. 4429 § 2. The Tenth Circuit has not addressed the issue presented here. This Court therefore writes on a clean slate.

## II. Glass Lewis Does Not Have a Likelihood of Success on the Merits of Its Vagueness Claim.

H.B. 4429's provisions and standards are clear and do not enable arbitrary enforcement. Under the void-for-vagueness doctrine, a law is unconstitutional if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (citation omitted). Notably, however, "perfect clarity and precise guidance have never been required." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). The vagueness doctrine requires only "that statutory commands provide fair notice to the public." *Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1233 (10th Cir. 2023). H.B. 4429 does so.

Glass Lewis brings its claim as applied. Doc. 1 ¶ 102. A plaintiff whose conduct is clearly covered by a statute "cannot complain of the vagueness of the law as applied to the conduct of others." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)). Glass Lewis is covered to the core. It alleges that it serves an Oklahoma client, that it reports on companies headquartered in Oklahoma, and that it regularly recommends against their management. Doc. 1 ¶¶ 52, 54, 57. Uncertainty at the Act's edges cannot support relief for a plaintiff in that position. *See Humanitarian L. Project*, 561 U.S. at 21.

Glass Lewis claims that the law's trigger is vague. Doc. 8 at 22. However, a proxy advisor's obligations are triggered by a single, determinate event: when the advisor makes a "recommendation against company management on a company proposal or proxy proposal" or when a default recommendation or policy has the same result. H.B. 4429 § 4(A). A recommendation to vote differently from the vote recommended by company management is the trigger. *Id.* The definition of "[d]efault recommendation or policy" is broad, but breadth is not vagueness. H.B. 4429 § 3(5).

Glass Lewis also alleges that the Act's geographic scope is unclear. Doc. 8 at 22. The Act applies to proxy advisors in and out of Oklahoma who provide proxy advisory services to persons in this state or in connection with Oklahoma companies. The Act defines "[p]roxy advisor" as "a person who, for compensation, provides a proxy advisory service to shareholders of a company or to other persons with authority to vote on behalf of shareholders of a company." H.B. 4429 § 3(6). "Proxy advisory service" is defined as certain services "that are provided in connection with or in relation to a company or are provided to

any person in this state." *Id.* § 3(7). Glass Lewis claims that it is unclear whether "in this state" modifies only "person" or whether it also modifies "company." Doc. 8 at 22. The Act's findings answer the question. The Legislature acted to prevent deceptive practices "in this state." H.B. 4429 § 2(4). Absent express language, Oklahoma courts presume that the Legislature "did not intend to give its enactments impermissible extraterritorial operation." *Cont'l Res., Inc. v. Wolla Oilfield Servs., LLC*, 510 P.3d 175, 181 (Okla. 2022). So "company" in Section 3(7) reaches companies within Oklahoma's regulatory authority, not every public company in the world. Wherever the outer boundary of that term lies, Glass Lewis is inside it. By its own account, it covers companies "with headquarters in Oklahoma" for an Oklahoma client. Doc. 1 ¶¶ 54, 57.

Lastly, Glass Lewis claims that it is unclear whether the Act requires the website disclosure statement to be visible to those who are in Oklahoma or whether it must be visible to internet users worldwide. Doc. 8 at 22–23. Under Section 4(A)(3), if a proxy advisor makes a recommendation against company management and does not do so based on a written financial analysis, then the proxy advisor must "publicly and conspicuously" place a statutory disclosure on the "home or front page of the proxy advisor's website." That language answers the question. The statement goes on the home page, where the public can see it. The Act says nothing about tailoring the page to a visitor's location, and a statute is not vague because it leaves the means of compliance to the regulated party.

Because H.B. 4429's terms are not vague, it does not invite arbitrary enforcement. The Act's fundamental requirement is disclosure, namely, whether the proxy advisor performed a written financial analysis or not. Because H.B. 4429 requires a disclosure either way—either

providing the written financial analysis or stating that no such analysis was performed—the only question for an enforcing officer is whether the disclosure was made. The Attorney General's past criticism of ESG investing, Doc. 8 at 23, describes a policy disagreement, not a standardless statute.

## III. The Remaining Preliminary Injunction Factors Favor Defendant.

Setting aside the likelihood of success on the merits, to be entitled to an injunction, a plaintiff must also establish "that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Glass Lewis will not suffer irreparable harm absent an injunction. For the reasons discussed above, Glass Lewis will not suffer deprivation of any constitutional right if the Court denies the motion. Compliance with the statute will not cause reputational harm to Glass Lewis. H.B. 4429 does not restrict any speech. Proxy advisors are free to add any commentary they wish in explaining the disclosures to their customers. Glass Lewis's delay confirms the point. The Governor signed H.B. 4429 on May 1, 2026, Doc. 1 ¶ 17, and Glass Lewis sued Indiana over its statute on April 30, *Rokita*, 2026 WL 1847882, at *3, yet it waited until September 4 to sue here. Delay in seeking preliminary relief "cuts against finding irreparable injury." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009) (internal quotation omitted).

The government, on the other hand, will suffer irreparable harm if a duly enacted state law is enjoined. *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.") (citation omitted). Finally, it would not

be in the public's interest to have a consumer protection law meant to prevent fraud enjoined as unenforceable.

## IV. If the Court Finds Any Portion of H.B. 4429 Unconstitutional, It Must Be Severed and the Remainder of the Statute Must Remain Valid.

Were the Court to find any portion of H.B. 4429 unconstitutional, it should sever that portion and leave the valid components in place. When a federal court considers the constitutionality of a state statute, it applies the state's law of severability. *See Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996) (per curiam) ("Severability is of course a matter of state law.").

Under Oklahoma law, "[i]f any provision or application of [an] act is found to be unconstitutional and void, the remaining provisions or applications of the act shall remain valid." OKLA. STAT. tit. 75, § 11a(1). This Oklahoma severability statute "is a general provision creating a presumption that if one portion of a statutory provision should fail, the balance should retain its validity." *Okla. Corr. Prof'l Ass'n v. Jackson*, 280 P.3d 959, 965 (Okla. 2012). The statute requires a determination "whether: a) the purpose of the statute would be significantly altered by severing the offending language; b) the Legislature would have enacted the remainder of the statute without the offending language; and c) the non-offending language is capable of standing alone." *Id.* If the Court concludes that the board-notice or home-page requirements are likely invalid, H.B. 4429 § 4(A)(2)–(3), (B)(3), any injunction should reach only those provisions and leave the client disclosure in force. That provision can stand alone, and an injunction should be no broader than the violation found.

## CONCLUSION

Defendant respectfully requests that this Court deny the motion for preliminary injunction.

Respectfully submitted,

*s/ Garry M. Gaskins, II*

GARRY M. GASKINS, II, OBA NO. 20212
*Solicitor General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Garry.Gaskins@oag.ok.gov
*Counsel for Defendant*